UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| USA TRACK & FIELD, INC., | ) |
| | ) |
| Plaintiff and | ) |
| Counter-Defendant, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01828-TWP-DML |
| | ) |
| LIONEL LEACH, RON MASCARENAS, | ) |
| KENNETH FERGUSON, DOROTHY | ) |
| DAWSON, LINDA ELLIS, LINDA PHELPS, | ) |
| NORINE RICHARDSON, HENRY | ) |
| MCCALLUM, DAVID REINHARDT, INEZ | ) |
| FINCH, MARC JONES, MARY ELIZABETH | ) |
| AUDE, and JACQUELINE WHITE, | ) |
| | ) |
| Defendants and | ) |
| Counter-Claimants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on a Motion for Preliminary Injunction filed pursuant to Federal Rule of Civil Procedure 65(a) by Defendants Lionel Leach, Ron Mascarenas, Kenneth Ferguson, Dorothy Dawson, Linda Ellis, Linda Phelps, Norine Richardson, Henry McCallum, David Reinhardt, Inez Finch, Marc Jones, Mary Elizabeth Aude, and Jacqueline White (collectively the "Youth Executive Committee" or "Defendants") (Filing No. 10). In May 2016, the USA Track & Field Board of Directors voted to immediately suspend each of the Defendants from their positions as members of the USA Track & Field, Inc. ("USATF") Youth Executive Committee. On June 3, 2016, Plaintiff USATF initiated this action by filing a Complaint in state court seeking declaratory and injunctive relief as well as damages against the Youth Executive Committee, asserting claims for tortious interference with contract, conspiracy to interfere with a business relationship, tortious interference with prospective business relationships, common law

conversion, criminal conversion, violation of Indiana's Uniform Trade Secrets Act, and declaratory judgment regarding the interpretation of USATF's bylaws and regulations (Filing No. 1-1). On July 8, 2016, the Youth Executive Committee removed the action from state court to this Court based on diversity jurisdiction.

Thereafter, the Youth Executive Committee filed the instant Motion for Preliminary Injunction and supporting brief. They seek a preliminary injunction for: (1) reinstatement to their positions as members of the Youth Executive Committee; (2) reinstatement of their USATF memberships and ability to serve as coaches, mentors, volunteers, officials, or local association leaders; and (3) a defense and indemnification from USATF for USATF's claims against the Youth Executive Committee. For the following reasons, the Court **DENIES** the Youth Executive Committee's Motion for Preliminary Injunction.

## I.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted). When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:

> (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.

*Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). The greater the likelihood of success, the less harm the moving party needs to show to obtain an

injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

## II.   BACKGROUND

USATF is based in Indianapolis, Indiana and is the recognized national governing body and non-profit organization for "Athletics" (comprised of the sports of track and field, long distance running, and race walking). USATF is subordinate to the United States Olympic Committee ("USOC"). USATF selects, promotes, and oversees the USA Track and Field National Team that competes at the Olympics and at other international competitions in Athletics events. It helps develop future track and field athletes, promotes the sport of track and field, and establishes and enforces the rules of Athletics. It encompasses the No. 1 high school and junior high school participatory sport and more than 30 million adult runners in the United States. Led by President Stephanie Hightower and CEO Max Siegel, USATF is a volunteer-driven, not-for-profit organization with a staff of professional program administrators at the National Office in Indianapolis.[1]

The individual Defendants were each members of the USATF Youth Executive Committee. The Youth Executive Committee is the executive committee of the USATF Youth Division. It includes the Divisional Chair, the Divisional Vice Chair, the Vice Chair of Operations, the Vice Chair for Administration/Treasurer, the Divisional Secretary, five Zonal Representatives, the immediate past Divisional Chair, and one ex-officio member. Lionel Leach was the Divisional Chair. On May 24, 2016, the USATF Board of Directors voted 11 to 1 to immediately suspend each of the Defendants from their positions as members of the Youth Executive Committee. (Filing No. 1-1 at 2.)

---

[1] http://www.usatf.org/About.aspx. Last visited on November 4, 2016.

Each of the Defendants has participated in track and field in various capacities. Some began their participation as athletes. Each has served their communities and the youth in their communities as coaches, managers, administrators, trainers, officials, or mentors. They have made serving their communities through sports participation a central part of their lives. Many of the members of the Youth Executive Committee have made it their life mission to serve youth through participation in track and field sports. Some of the Defendants have served for many years, some more than thirty years, having a positive impact on the youth in their communities. Many of the Defendants testified at the preliminary injunction hearing that the news of their suspensions and the abrupt termination of their life mission has made them physically sick and has led to loss of sleep.

USATF is comprised of fifty-nine local associations, each with its own officers, board, and committees. The Defendants were not only members of the Youth Executive Committee but also active within their local associations.

USATF's Governance Handbook provides the rules, policies, and procedures for USATF. The Governance Handbook also describes the roles of USATF's Board of Directors (the "Board") and the National Office. USATF is governed by the Board, which establishes policies, oversees all USATF committee programs, and selects a chief executive officer to lead the National Office. The Board and National Office direct and oversee USATF's programming. They are assisted by five divisions and one group that are led by volunteers, including the Youth Athletics Division, which is directed by the Youth Executive Committee.

USATF Bylaw Article 12-A-7 requires that any commercial agreement or contractual obligation binding USATF must be signed by the USATF CEO or his designee, unless the Board otherwise directs. USATF Bylaw Article 18-I requires USATF, through its CEO, to communicate

4

the contents of all contracts affecting sports committees with those committees during the negotiation phase. USATF Bylaw Article 12-A-8 provides that the CEO shall be responsible for managing all commercial aspects of USATF. Regulation 15-C-1 provides jurisdiction to the various USATF committees to institute, conduct, and manage all championships within their discipline and under their auspices.

USATF Bylaw Article 18-D states,

> USATF shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, administrative, or investigative, by reason of the fact that he or she is or was a director, officer, employee, or official representative of USATF against expenses, including attorney's fees, judgments, fines, and amounts actually and reasonably incurred by him or her in connection with the action, suit, or proceeding. To qualify for indemnity, he or she must have acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, USATF's best interests. . . . The termination of any action, suit, or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of USATF. . . . Any indemnification under this article shall be made by USATF after the Board determines that the officer, director, employee, or official representative has met the applicable standard of conduct. The Board shall make its decision by a majority vote of a quorum consisting of members of the Board who are not parties to the action, suit, or proceeding. If such a quorum is not obtainable, the CEO shall make the decision, after consulting with independent legal counsel.

([Filing No. 9-7 at 27](#)).

To operate a track and field meet, a meet organizer needs both timing software and event registration software. The two software programs must be compatible to link registrations with race results but particularly so for feeder events to national championships because an entrant's qualifications to register are determined by the race results of the timing software. Pertinent to this case, timing software vendors include Hy-Tek and Meet Pro, and event registration software vendors include Coach O, Direct Athletics, and Athletic.net. Through its CEO and national staff, USATF seeks and develops contractual relationships with vendors, sponsors, and other partners.

5

In late 2015, Defendant Lionel Leach informed Renee Washington ("Ms. Washington"), the Chief Operating Officer of USATF, that the Youth Executive Committee was going to switch the timing system vendor for all youth track meets to Meet Pro even though that timing system was not compatible with the event registration system that was being used, which was Coach O. Most associations were using Coach O and Hy-Tek for their event registration and timing systems. Mr. Leach explained to Ms. Washington that the Youth Executive Committee already had extensively discussed this decision to make a change to the timing system and that he was in negotiations with Direct Athletics to enter a contract for event registration for youth meets. Ms. Washington informed Mr. Leach that the national staff already was in negotiations with a new event registration system provider.

During this same time in late 2015, the National Office was completing due diligence regarding event registration service providers. The National Office was in negotiations with an event registration service provider, which would provide a lucrative sponsorship agreement for USATF. When this potential sponsor learned that the Youth Executive Committee was going to use Meet Pro for all youth meets, it immediately ceased negotiations with USATF because it was not compatible with Meet Pro.

At the 2015 USATF annual meeting, Mr. Leach invited Meet Pro to present at the youth workshop, and then he made a public announcement that Meet Pro would be the exclusive provider of timing systems for youth meets. Mr. Leach's announcement was made without the knowledge of or input from the USATF National Office, the Board, or the Associations Committee, which were directly impacted by the Youth Executive Committee's decision and announcement. The Associations Committee immediately complained to the National Office, including a complaint

that local associations would incur unnecessary, additional costs to purchase and become familiar with Direct Athletics and Meet Pro.

In January 2016, USATF entered into a one-year contract with Athletic.net to provide online track meet registration services for USATF's 2016 youth championship events. Athletic.net allowed local associations to use any timing system with the Athletic.net registration system. Rather than use this new online registration system, the Youth Executive Committee challenged the decision of the National Office and continued using a different registration system for some of the youth track meets in January 2016. The Youth Executive Committee also encouraged local associations to use other registration systems, not Athletic.net. The Youth Executive Committee publicly criticized the Athletic.net online registration system and the National Office's decision to use the system. USATF viewed the actions of the Youth Executive Committee as potentially causing a breach of its recent agreement with Athletic.net and compromising the integrity of USATF and its operations.

The Youth Executive Committee canceled a number of youth qualifying meets in early 2016. Mr. Leach posted a video on YouTube, explaining that the meets were canceled because of some online registration issues and potential participants would be automatically entered into the national championships. USATF received complaints from parents of youth athletes regarding the canceled meets.

On February 2, 2016, USATF filed an internal grievance against Mr. Leach, in which it sought declaratory relief that the event registration process and vendor relationships should be handled by the USATF National Office as a matter of its day-to-day affairs. (Filing No. 27-2 at 5–10.) USATF pointed to Bylaw Article 12-A-8 that provides the CEO with the responsibility to manage all commercial aspects of USATF. When Mr. Leach later responded, he asserted that

Regulation 15-C-1 provides him with authority to institute, conduct, and manage all championships within the Youth Executive Committee's jurisdiction.

USATF's National Office sent a notice to the local associations reminding them that Athletic.net was USATF's designated online registration system provider for 2016. The notice also included instructions on how to set up the system. In response to this notice, the Youth Executive Committee circulated a petition to members of USATF on April 19, 2016, to object to USATF's efforts to install Athletic.net as the exclusive registration provider for USATF. The Youth Executive Committee's petition explained that it believed the National Office was not following USATF bylaws and regulations.

On May 2, 2016, the Youth Executive Committee passed a resolution that stated Athletic.net was not being responsive to their needs and that USATF also was not being responsive. Mr. Leach posted a second video on YouTube on May 17, 2016, explaining that the National Office was not being responsive and was not following USATF rules and regulations, that Athletic.net was not working properly, and that the local associations should use different systems for their meets. USATF received complaints that the Youth Executive Committee's actions would reduce the number of registrations for youth meets, including the 2016 national junior Olympics championships. Athletic.net also contacted USATF to complain about the defamatory and harmful statements made against it and the potential breach of contract.

On May 24, 2016, one week after the second YouTube video was posted, the chairman of USATF's ethics committee sent a notice to each member of the Youth Executive Committee, informing them that they were under investigation for ethics violations in connection with the YouTube video and the petition. Also on May 24, 2016, USATF's Board of Directors voted to immediately suspend Mr. Leach and each of the members of the Youth Executive Committee. The

Defendants were not given a hearing or any other opportunity to present evidence or argument to defend against their suspensions. The suspensions were publicly announced on May 25, 2016, on USATF's website.

On May 25, 2016, USATF's general counsel, Norm Wain ("Mr. Wain"), sent a letter to each of the Defendants, stating that they had been suspended from USATF and that they were not to have any involvement with the organization in any capacity whatsoever. Mr. Wain's letter further explained that the Youth Executive Committee's conduct surrounding the selection of a vendor to provide registration services for the 2016 youth championship meets exceeded their volunteer roles and authority and negatively impacted the viability of the events. Mr. Wain also explained that the Youth Executive Committee was negatively impacting USATF's ability to fulfill its contractual obligations to its vendors and sponsors.

As a result of their suspensions, the Youth Executive Committee members are ineligible to participate in USATF events as amateur athletes, coaches, managers, administrators, trainers, and officials. Additionally, USATF will hold its annual meeting November 30 through December 4, 2016. The fifty-nine local associations had to declare their delegates for the annual meeting by October 1, 2016. Delegates at the annual meeting will vote for USATF's office holders, who will hold their positions for the next four years. As a result of the suspensions, the Youth Executive Committee members have been deprived of the opportunity to attend the 2016 annual meeting as voting delegates and the opportunity to run for office.

In addition to the public announcement on USATF's website and the letters sent to the Defendants, Mr. Wain also sent a letter to the organizer of the 2017 Junior Olympics, notifying him that Ken Ferguson, one of the Defendants, was suspended and could not have any involvement whatsoever with the 2017 Junior Olympics unless and until further notice from USATF.

On May 26, 2016, the day after the public announcement of the Youth Executive Committee's suspensions, the Defendants filed a verified complaint with the USOC, requesting that the USOC set aside their suspensions and that they be restored to their positions on the Youth Executive Committee (the "USOC Proceeding"). The Defendants also asked the USOC to revoke its recognition of USATF as the national governing body for Athletics. ([Filing No. 9-8](#).)

On June 3, 2016, USATF filed an internal disciplinary complaint against all of the Defendants, requesting that each member of the Youth Executive Committee have their membership revoked and that they be permanently expelled from participating in any activities of USATF as a member, volunteer, athlete, coach, or in any other capacity. ([Filing No. 9-1](#).)

Also on June 3, 2016, USATF filed its state court Complaint against all of the Defendants, alleging eight separate counts. On July 8, 2016, the Defendants removed USATF's state court case to this Court based on diversity jurisdiction. Then on July 15, 2016, the Defendants filed their Motion for Preliminary Injunction in this Court.

On June 4, 2016, Mr. Leach responded to the February 2, 2016 internal grievance complaint filed by USATF against him. On June 13, 2016, the USATF grievance panel, an independent body of arbitrators, conducted a pre-hearing conference. By agreement of the parties, the grievance panel ordered the February 2, 2016 grievance complaint against Mr. Leach and the June 3, 2016 disciplinary complaint against the Youth Executive Committee to be consolidated and decided together. The panel also set a hearing on the consolidated internal grievance and disciplinary complaints for November 14, 2016. ([Filing No. 27-2 at 39](#)–41.)

After the administrative grievance hearing was set for November 14, 2016, USATF filed a motion to dismiss with the USOC hearing panel on June 30, 2016, seeking to dismiss the Youth Executive Committee's separate USOC Proceeding. ([Filing No. 33-1](#).) USATF asserted that the

USOC Proceeding should be dismissed because the members of the Youth Executive Committee had failed to exhaust their administrative remedies through the internal grievance procedure and because they failed to state claim upon which relief can be granted.

In a written decision issued on September 20, 2016, the USOC hearing panel granted USATF's motion to dismiss the USOC Proceeding, explaining "the Hearing Panel finds that [the Youth Executive Committee] have not exhausted their administrative remedies, nor have they shown by clear and convincing evidence that doing so would have resulted in unnecessary delay or would have been futile because of prejudice to [the Youth Executive Committee]." (Filing No. 64-1 at 11.) The USOC hearing panel did not address the failure-to-state-a-claim argument because of its dismissal on the basis of the failure to exhaust administrative remedies.

Following the dismissal of the USOC Proceeding, the parties' remaining proceedings are (1) the administrative grievance procedure set for hearing on November 14, 2016, before a grievance panel to consider the February 2, 2016 grievance complaint against Mr. Leach and the June 3, 2016 disciplinary complaint against the Youth Executive Committee; and (2) the civil action before this Court, wherein the Youth Executive Committee's Motion for Preliminary Injunction is pending. Both the Motion for Preliminary Injunction and the administrative grievance hearing involve the Youth Executive Committee's request for reinstatement as members of USATF and as members of the Youth Executive Committee.

### III.   DISCUSSION

In order to obtain a preliminary injunction, the Youth Executive Committee must show that it has a reasonable likelihood of success on the merits of the claims, that no adequate remedy at law exists, that it will suffer irreparable harm if a preliminary injunction is denied, that the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm

11

USATF will suffer if the preliminary injunction is granted, and that the preliminary injunction will not harm the public interest. *Platinum Home Mortg. Corp.*, 149 F.3d at 726. The Youth Executive Committee seeks a preliminary injunction for reinstatement to their positions as members of the Youth Executive Committee and as members of USATF as well as for a defense and indemnification from USATF for USATF's claims against them.

**A.     Reinstatement**

The Youth Executive Committee asserts that they are entitled to a preliminary injunction for reinstatement to their positions as members of the Youth Executive Committee and for reinstatement of their USATF memberships and ability to serve as coaches, mentors, volunteers, officials, or local association leaders. They provide a compelling argument that they have a reasonable likelihood of success on the merits of their claim for reinstatement because USATF failed to follow statutory and administrative law when it suspended the memberships of the Youth Executive Committee without first providing any due process. The Board of Directors voted to suspend the Defendants from their positions immediately, without notice and hearing contrary to USATF bylaws. USATF also then revoked the decades-long memberships of all thirteen members of the Youth Executive Committee, and banished the members from any involvement or association with USATF in *any* way in the future. Defendants assert that USATF failed to comply with its own rules, regulations, and bylaws. Thus, they argue, they have a reasonable likelihood of success on the merits of their claim.

They next assert that they will suffer irreparable harm without an injunction because their reputations will be harmed, they will miss the opportunity to vote and run for office at the USATF annual meeting, and they will be deprived of participating in a sport that is a central part of their lives. Many of the members of the Youth Executive Committee have made it their life mission to

serve youth in track and field sports. The Youth Executive Committee argues that these harms cannot be remedied without a preliminary injunction, and traditional legal remedies will be inadequate. Because of the abstract nature of the harms suffered, the Defendants explain that monetary damages will not adequately remedy the harm, and whatever remedy is provided will come too late if it is not provided preliminarily.

In balancing the harms and considering the public interest, the Youth Executive Committee asserts that USATF will not suffer any harm by a preliminary injunction because it will result in USATF receiving the benefit of additional volunteer service provided by the experienced members of the Youth Executive Committee. That benefit to USATF is outweighed by the harm suffered by the Defendants who are deprived of the opportunity to participate as mentors, coaches, and trainers, and who cannot participate in the USATF annual meeting and election. They further explain that the public interest is actually served by a preliminary injunction because it will allow the members of the Youth Executive Committee to continue providing volunteer service work in their communities to underserved youth as their coaches, trainers, and mentors. The need to find replacement coaches and leaders in the local track associations will burden the public interest.

Responding in opposition to the Motion for Preliminary Injunction, USATF explains that an injunction is not warranted because the Defendants are not reasonably likely to succeed on the merits of their claim for reinstatement because USATF's actions were consistent with and within the bounds of its bylaws. USATF further asserts that the Court does not even have to reach the merits argument because the Defendants have failed to exhaust their administrative remedies and courts do not interfere in the internal governance of voluntary membership associations like USATF.

Concerning USATF's argument that courts do not interfere in the internal governance of voluntary membership associations, the Court notes that USATF is the party that initiated this civil action by filing its Complaint. In that Complaint, USATF not only asserted tort claims but also a claim for declaratory judgment regarding the interpretation of USATF's bylaws and regulations and the parties' rights and authority under the bylaws and regulations. USATF put its internal governance squarely at issue in this civil action by requesting declaratory relief. Thus, this argument does not favor USATF's position.

As noted above, both the Motion for Preliminary Injunction and the administrative grievance hearing involve the Youth Executive Committee's request for reinstatement as members of USATF and as members of the Youth Executive Committee. The administrative grievance proceeding set for hearing on November 14, 2016, before a grievance panel will consider the February 2, 2016 grievance complaint against Mr. Leach and the June 3, 2016 disciplinary complaint against the Youth Executive Committee. An administrative decision favorable to the Youth Executive Committee will resolve the reinstatement issues pending before this Court.

During the preliminary injunction hearing before the Court, counsel for the Youth Executive Committee discussed various options for resolving the parties' dispute. Included in his discussion was the November 14, 2016 administrative hearing on the consolidated internal grievance and disciplinary complaints. He explained, "the Court could order an expedited hearing. I think a better result would be to leave the [administrative] hearing in place, but just to tell USATF to follow the Act, to follow its own bylaws, and not expel -- excommunicate these people from the sport until that hearing is held." (Filing No. 61 at 23.)

Based on the faulty premise that neither USATF nor the Youth Executive Committee could initiate the grievance process against each other because the Defendants were not members at the

time the grievance was filed, the Youth Executive Committee asserts that they should be reinstated retroactively to the date their memberships were suspended. Then "they should be afforded all of the opportunities available to them as though there was no penalty/suspension; and only then could USATF initiate a grievance, which would be handled in accordance with the due process mandates of the Act and bylaws." The Youth Executive Committee then acknowledges that "[a]ny Court involvement after those steps, then, would appropriately be limited to appeals from the grievance process." (Filing No. 73 at 6.) Thus, it appears that the Youth Executive Committee recognizes the appropriateness of allowing administrative procedures to run their course before district courts become involved in resolving parties' disputes.

The evidence before the Court regarding the likelihood of success on the merits is strong. However, USATF has presented a compelling argument that the proper course is to allow the administrative process to run its course to a final decision. To ultimately decide whether Defendants are entitled to a preliminary injunction, the Court must assess not only their likelihood of success on the merits, but also whether they are likely to suffer irreparable harm in the absence of preliminary relief, whether the balance of inequities tips in their favor, and whether issuing an injunction in the public interest. *See Grace School v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). In light of the claims at issue in both the administrative grievance proceeding and in this civil action, and also considering the procedural history and posture of both matters, the Court concludes that a ruling on a preliminary injunction for reinstatement in this matter is premature. Therefore, the Court **denies** the Youth Executive Committee's request for a preliminary injunction for reinstatement because the request is premature. However, the Court notes that dismissal for failing to exhaust administrative remedies is not appropriate at this stage because it was USATF

that filed the Complaint for declaratory judgment regarding the interpretation of its bylaws and regulations and the parties' rights and authority under the bylaws and regulations.

B.     **Defense and Indemnification**

The Youth Executive Committee also argues that they are entitled to a preliminary injunction for a defense and indemnification from USATF for USATF's claims against them. The Youth Executive Committee does not provide argument, analysis, or authority for each factor of the test for a preliminary injunction. Rather, they briefly explain that they must be indemnified because USATF improperly suspended them and then turned around and sued them personally, causing them to incur legal fees and costs. They point to *Kinney ex. rel. NLRB v. Int'l Union of Operating Eng'rs Local 150*, 994 F. 2d 1271, 1279 (7th Cir. 1993), for the proposition that "a remedy of damages is inadequate if, among other things, it comes too late, if the plaintiff cannot finance a lawsuit without revenues that will be lost absent an injunction, or if damages are difficult to calculate." The Youth Executive Committee argues that, without a preliminary injunction providing indemnification, any remedy will come too late, and they likely will not be able to finance this litigation to conclusion.

USATF responds that a preliminary injunction providing indemnification is inappropriate because the Defendants failed to adequately support the claim with argument and authority, and thus, it is waived. USATF further asserts that their claim for indemnification would fail on the merits as a matter of law and under the bylaws of USATF. USATF explains that, even if the Defendants succeeded on the merits, they are not without an adequate remedy at law because "[i]ndemnification is, at its heart, money damages." (Filing No. 29 at 30.)

Similar to the claim for a preliminary injunction for reinstatement, the Court concludes that the proper course is to allow the administrative grievance proceeding to reach its conclusion in

<br/>

light of its claims, procedural history, and posture. Therefore, the Court **denies** the Youth Executive Committee's request for a preliminary injunction for indemnification as being premature.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Youth Executive Committee's Motion for Preliminary Injunction (Filing No. 10). Injunctive relief on the issue of reinstatement is premature.

The parties are directed to meet with the Magistrate Judge following the administrative hearing to determine case management deadlines for the continuation of this litigation.

**SO ORDERED.**

Date: 11/7/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

R. Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

Kara M. Kapke
BARNES & THORNBURG LLP
kara.kapke@btlaw.com

Adeyemi Adenrele
BARNES & THORNBURG LLP
adey.adenrele@btlaw.com

David R. Greifinger
LAW OFFICES OF DAVID R. GREIFINGER
tracklaw@me.com

Christopher D. Lee
WOODEN & MCLAUGHLIN LLP
chris.lee@woodenmclaughlin.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jim.boyers@woodenmclaughlin.com

Crystal Spivey Wildeman
WOODEN & MCLAUGHLIN LLP
cwildeman@woodmclaw.com

John Charles Babione, II
WOODEN & MCLAUGHLIN LLP
john.babione@woodenmclaughlin.com